NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: July 1, 2025

S25A0570. JACOBS v. THE STATE.

ELLINGTON, Justice.

Steven Alford Jacobs appeals his convictions for malice murder and other crimes in connection with the shooting death of Curtis Pitts.[1] On appeal, Jacobs contends that the trial court violated his

---

[1] The crimes occurred on or about September 21, 2018. On October 14, 2020, a Butts County grand jury returned an indictment charging Jacobs with malice murder (Count 1); felony murder (Counts 2-3); aggravated assault (Count 4); armed robbery (Count 5); possession of a firearm during the commission of a felony (Counts 6-8); abandonment of a dead body (Count 9); and concealing the death of another (Count 10), in connection with the shooting death of Pitts. At the conclusion of a jury trial that began on November 7, 2022, the jury found Jacobs guilty on all counts. On November 9, 2022, the trial court sentenced Jacobs to life in prison without the possibility of parole for malice murder (Count 1). The trial court purported to merge the felony murder counts (Counts 2-3) into the malice murder conviction, but those counts were actually vacated by operation of law. *See Hulett v. State*, 296 Ga. 49, 53-55 (1), (2) (a) (766 SE2d 1) (2014). The trial court merged the aggravated assault count (Count 4) and armed robbery count (Count 5) into the malice murder conviction. The court imposed five-year prison terms for two of the counts of possession of a firearm during the commission of a felony (Counts 6 and 8), with Count 6 to run consecutively to Count 1 and Count 8 to run consecutively to Count 6. The court merged the other count of possession of a firearm during the commission of a felony (Count 7) into Count 6. The court imposed a three-year prison term for the count of abandonment of a dead body (Count 9), to run consecutively to Count 8, and a ten-year prison term for concealing the death

right to be present, under the Georgia Constitution, during a critical phase of the proceedings against him by allowing the jury to view a vehicle connected to the charges without him being present. For the reasons explained below, we affirm.

Jacobs was arrested  in connection with the shooting death of Pitts and tried for the counts in the indictment. The evidence presented at trial showed that, on the morning of September 21, 2018, Pitts was found, shot to death, only a few hours after he was seen getting into a van driven by Emmanuel Nesbitt and in which Jacobs was a passenger. A little after midnight on September 22, 2018, law enforcement conducted a traffic stop on the van, with Nesbitt driving and Jacobs riding inside.

During a search of the van, officers located an eight-shot revolver. The forensic evidence showed that Pitts had nine bullet-

---

of another (Count 10), to run consecutively to Count 9.

Jacobs timely filed a motion for new trial on November 10, 2022, which was amended through new counsel on September 5, 2023. After an evidentiary hearing, the trial court denied the motion for new trial on November 7, 2024. Jacobs timely filed a notice of appeal on December 2, 2024,  and the case was docketed in this Court to the April 2025 term and submitted for a decision on the briefs.

entry wounds on his body, that four of the bullets collected and tested were confirmed to have been fired from the revolver located inside the van, and that Jacobs had gunshot residue on the pants he had been wearing fewer than 24 hours after Pitts was found dead.

During the trial, crime scene investigator Audey Murphy testified that he processed the van, and the State tendered into evidence photographs of the van that Agent Murphy took. Butts County Investigator Jeanette Riley testified that, after the van was processed, it was towed to the parking lot behind the administrative building of the courthouse, where the prosecutor, in the presence of Investigator Riley, took photos of the van as it sat in the lot behind the building on the morning of the second day of trial. Investigator Riley testified that nothing had been changed, modified, moved, or altered in the van except that law enforcement released some of the items located within the van to its owner.

In open court—in the presence of Jacobs and the jury—the State informed the court that the van was behind the building for the jury to view, and the defense objected, stating that it did not

3

know if the van was "in the same exact condition as it was back in 2018." The court stated that it was going to allow the jury to view the van and instructed:

> You're going to see the vehicle. It's going to have crime tape around it. Walk around it two or three times, whatever you think. You can carry your pads with you if you want to write notes. Nobody needs to question you about it. You're not to ask any questions either. But you're just getting a viewing of the vehicle. You'll go out there right now.

After the jury returned from the viewing, the State tendered into evidence the photographs of the van that the prosecutor had taken that morning.

At the conclusion of the trial, the jury found Jacobs guilty on all counts. Following Jacobs's convictions, he filed a motion for new trial, which was later amended by new counsel. At the hearing on that motion, Jacobs testified that he was not given an opportunity to be present when the jury viewed the van, that he did not have any conversation with his attorney about the right to be present, and that, if he had been aware of that right, he would have wanted to attend the viewing and would have objected to not being allowed to

4

do so.

One of Jacobs's trial attorneys, Devlin Cooper, testified at the motion for new trial hearing that he remained in the courtroom with Jacobs while his co-counsel, Ashley Cooper and Todd Stanage, accompanied the jury for the viewing. Cooper specifically recalled having a dialogue with the court about "what to do with Mr. Jacobs, if he didn't want to go view the van" because the court did not want to leave him in the courtroom without a bailiff and did not want to place him in the holding cell which the jurors would pass and see him in confinement. Cooper testified that he talked with Jacobs about viewing the van, informing Jacobs of his "right to go outside" to be present when the jury was viewing the vehicle and suggesting that "it would be useful for the jury to observe him paying attention." But Cooper testified that "[Jacobs] said no," and Cooper believed that Jacobs's reaction suggested he "would be creeped out by the thought of going out to see the van." Cooper and the team "had two or three conversations" with Jacobs about his opportunity to go with the jury to view the van. Jacobs's two other trial counsel attended

5

the jury viewing of the vehicle, and although neither had a personal conversation with Jacobs about whether he would attend, one of the two attorneys remembered that the team of attorneys had, at some point, discussed the matter with him.

The trial court denied the amended motion for new trial, concluding that the "evidence [was] consistent" with a "waiver by [Jacobs] to not view the van." On appeal, Jacobs contends that the trial court erred by permitting the jury to view the van without Jacobs being present at the viewing.

"[T]he Georgia Constitution guarantees criminal defendants the right to be present, and see and hear, all the proceedings which are had against [them] on the trial before the Court." *Nesby v. State*, 310 Ga. 757, 758 (2) (853 SE2d 631) (2021) (citation and punctuation omitted). "The right to be present attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure." Id. (citation and punctuation omitted). "[A] critical stage in a criminal prosecution is one in which a defendant's rights may be lost, defenses waived,

6

privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way." Id. (citation and punctuation omitted).

"The right to be present belongs to the defendant, and he is free to relinquish it if he so chooses." Id. (citation and punctuation omitted). "A defendant may personally waive his right to be present at a stage in the trial, or counsel may waive this right for the defendant." Id. (citation and punctuation omitted). The defendant can waive the right to be present in several ways:

> if he personally waives the right in court; if his counsel waives the right at his express direction; if his counsel waives the right in open court while he is present; or, as seen most commonly in our case law, if his counsel waives the right and the defendant subsequently acquiesces to that waiver.

*Reed v. State*, 314 Ga. 534, 539 (3) (878 SE2d 217) (2022). But see *Hardy v. State*, 306 Ga. 654, 660 (832 SE2d 770) (2019) ("If not waived by the defendant, a direct violation of the right to be present is presumed prejudicial and requires a new trial.").

Even assuming, without deciding, that Jacobs had a right to be present, under the Georgia Constitution, at the jury viewing of the

7

van, the evidence supported the trial court's conclusion that Jacobs waived that right. See *Reed*, 314 Ga. at 539 (3). "[T]he trial court's findings of fact on the issue" of whether a defendant waived his right to be present "will be upheld on appeal unless clearly erroneous." *Neal v. State*, 313 Ga. 746, 749-750 (2) (873 SE2d 209) (2022) (explaining that the record supported the trial court's finding that the appellant acquiesced in his counsel's waiver of his right to be present) (citation and punctuation omitted). In denying the amended motion for new trial, the trial court made an explicit finding that the "evidence [was] consistent" with a "waiver by [Jacobs] to not view the van." Although the trial court did not expound upon this factual finding in any great detail, the finding was supported by evidence in the record and, accordingly, was not clearly erroneous. See id.

Jacobs argues on appeal that he did not have any conversation with his attorney about the right to be present, but two of his three attorneys testified at the motion for new trial hearing that they recalled a discussion with Jacobs about the right to attend occurring.

Although the conversations informing Jacobs of his right to attend and his verbal waiver of that right were not transcribed, one attorney recalled suggesting to Jacobs that it could be helpful for the jury to see him at the viewing but that "[Jacobs] said no," and gave some sort of negative reaction to the attorney's suggestion which indicated that Jacobs was "creeped out" by the idea of attending. The same attorney also specifically remembered details from a dialogue with the court about where Jacobs would stay during the viewing. Further, the trial judge instructed the jury—in open court, on the record, and in Jacobs's presence—about what was supposed to happen during the jury viewing. Accordingly, the trial court's finding of fact that Jacobs waived his right to be present was supported by evidence in the record, and therefore, that finding was not clearly erroneous. See *Neal*, 313 Ga. at 749-750 (2).

Jacobs relies on our holding in *Chance v. State*, in which we granted a new trial where a jury viewed a Ford automobile in the defendant's absence, to support his contention that the trial court violated his right to be present by allowing the jury to view the van

in his absence. *Chance v. State*, 156 Ga. 428, 430-433 (119 SE 303) (1923). In that case, we explained that "[i]t was the right of the defendant to be present when the automobile was being inspected." Id. at 433. But in that case, there was nothing in the record "to indicate that the defendant waived his right to be present when the court, counsel, and jury went to inspect the automobile which had been offered in evidence." Id. at 432. Here, however, the record contains Jacobs's trial counsel's testimony that Jacobs was made aware of his right to be present and waived that right. See *Nesby*, 310 Ga. at 759 (2); *Reed*, 314 Ga. at 539 (3).

Accordingly, we conclude that the trial court did not err in finding that Jacobs was not entitled to a new trial based on his absence at the jury viewing of the van in this case.

*Judgment affirmed. Peterson, CJ, Warren, PJ, and Bethel, McMillian, LaGrua, Colvin, and Pinson, JJ, concur.*